# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

_____

IN RE APPLICATION OF THE )
UNITED STATES OF AMERICA FOR )
AN ORDER PURSUANT TO )
18 U.S.C. § 3512 )          1:21MJ389
)
Request from Ukraine for Assistance in a )
Criminal Matter: In the Matter of Chris McGuire )
_____)

## APPLICATION OF THE UNITED STATES
### FOR AN ORDER PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this ex parte application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Tanner Kroeger, Assistant U.S. Attorney in the United States Attorney's Office for the Middle District of North Carolina, as a commissioner to collect evidence and to take such other action as is necessary to execute a request for assistance in a criminal matter from Ukraine. In support of this application, the United States asserts:

### RELEVANT FACTS

1.      The Central Authority of Ukraine, the Prosecutor General's Office, submitted a request for assistance (the "Request") to the United States,

pursuant to the Treaty Between the United States of America and Ukraine on Mutual Legal Assistance in Criminal Matters, U.S.-Ukr., July 22, 1998, S. TREATY DOC. NO. 106-16 (1999) (the "Treaty").

2.    As stated in the Request, the State Bureau of Investigation in Ukraine is investigating Chris McGuire ("McGuire") for smuggling, specifically, a potential violation of Article 201, paragraph 1 of the Criminal Code of Ukraine, which occurred on or about December 11, 2018.  Under the Treaty, the United States is obligated to assist in response to the Request.

3.    According to authorities in Ukraine, on December 11, 2018, in a customs control zone in Lviv, Ukrainian customs authorities found the following, hidden within a radio tuner, inside a parcel shipped from the United States:

   i.   four slides with barrels, firing mechanisms, and pull-back springs of Glock-19 autoloading pistols,
   ii.  two pull-back springs of Makarov autoloading pistols,
   iii. four triggers of Glock-19 autoloading pistols, and
   iv.  two magazines for Glock-19 autoloading pistols.

4.    According to the customs declaration, the sender was a person named "H.A." from the address 600 Markley Street, Port Reading, United States.1  However, after a closer inspection of the postal consignment notes (No. CVxxxxx3743US; TRK No. xxxx xxxx 1018), officials determined the sender was actually McGuire from 6001 Gun Club Road, Winston-Salem, North Carolina, 27103.   H.A. appears to have received the parcel from

_____

1 There was no state listed in the address, according to documents from Ukraine.

McGuire. Additionally, internet searches linked H.A.'s address in Port Reading to the international parcel delivery company Meest-America, Inc. ("Meest America").

5. To further the investigation, authorities in Ukraine have asked U.S. authorities to, among other things, obtain information associated with parcel No. CVxxxxx3743US; TRK No. xxxx xxxx 1018 from Meest America.

## LEGAL BACKGROUND

### The Treaty

6. A treaty[2] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (368) (1989) (internal quotation marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

7. The United States and Ukraine entered into the Treaty to promote more effective cooperation and assistance between the parties in criminal matters. See Treaty pmbl. The Treaty obligates each party, upon request, to

---

[2] The term "Treaty" used herein includes bilateral treaties and multilateral conventions.

provide assistance to the other in criminal investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures. See Treaty at art. 1. In addition, the Treaty, like 18 U.S.C. § 3512, authorizes federal courts to use compulsory measures to further the execution of such requests. See Treaty at art. 5(1) ("The competent authorities of the Requested State shall have authority to issue subpoenas, search . . . , or other orders necessary to execute the request.").

### 18 U.S.C. § 3512

8.      When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> *                    *                    *
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . (1) in the district in which a person who may be required to appear resides or is located or in which the documents or things to be produced are located; [or] (2) in any one of the [multiple] districts in which . . . a person, documents, or things may be located.
>
> *                    *                    *

The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

9.     Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[3]   This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

10.    An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs, which serves as the "Central Authority" for the United States,[4] has reviewed and authorized

---

[3] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were previously executed); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[4] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under

the request, and executes the request itself or delegates execution to another attorney for the government.[5]  Upon such a duly authorized application, Section 3512 authorizes a federal judge[6] to issue "such orders as may be necessary to execute [the] request," including:  (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  See 18 U.S.C. § 3512(a)(1)-(b)(1).  In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

11.    Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or produce

---

treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81A and 81B (2018).

[5] "Section 3512 can be invoked only when authorized by OIA. . . .  Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA."  Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[6] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1) and Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena." Any such subpoena may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f).

<u>REQUEST FOR ORDER</u>

12. As evidenced by a letter dated March 23, 2021, from the Office of International Affairs to the United States Attorney's Office for the Middle District of North Carolina, the Office of International Affairs has reviewed and authorized the Request and has delegated execution to the U.S. Attorney's Office for the Middle District of North Carolina. Consequently, this application for an Order appointing the undersigned Assistant U.S. Attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," the Prosecutor General's Office, the designated Central Authority of Ukraine, and seeks assistance in the investigation for smuggling, specifically, a potential violation of Article 201, paragraph 1 of the Criminal Code of Ukraine, which occurred on or about December 11, 2018. The requested Order is necessary to execute the Request, and the assistance requested, <u>i.e.</u>, obtaining relevant records from a shipping company involved, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this request is properly before the Court because the Middle District

of North Carolina is a district in which a person who may be required to appear resides or is located or in which the documents or things to be produced are located. Accordingly, this application was properly filed in this district.

13. This application is being made ex parte, consistent with U.S. practice in its domestic criminal matters.

14. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner's subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients. Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner's subpoena.

15. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Tanner Kroeger, Assistant United States Attorney from the United States Attorney's Office for the Middle District of North Carolina (or a substitute or successor subsequently designated by the United States Attorney for the Middle District of North Carolina) as a commissioner,

authorizing the undersigned to take the actions necessary, including the issuance of a commissioner's subpoena(s), as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence.

Respectfully submitted,

SANDRA J. HAIRSTON
Acting United States Attorney

/S/ TANNER L. KROEGER
Assistant United States Attorney
New York State Bar No. 5297015
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth St., 4th Floor
Greensboro, NC 27401
Phone: 336/333-5351
Email: tanner.kroeger@usdoj.gov